IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHELLE DENISE ROSALES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV97 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Michelle Denise Rosales ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on December 5, 2012, alleging disability onset dates of January 10, 2004 and June 1, 2003, respectively. (Tr. at 276-88.)[1] She later amended the alleged onset date for both claims to September 20, 2012. (Tr. at 13.) Plaintiff's applications

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

were denied initially (Tr. at 98-141, 193-200) and upon reconsideration (Tr. at 142-92, 207-24). Thereafter, she requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 225-26.) Plaintiff attended the subsequent hearing on March 13, 2015, along with her attorney and an impartial vocational expert. (Tr. at 13.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her amended alleged onset date through October 21, 2015, the date of her decision. (Tr. at 26.) On December 15, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her amended alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff had the following severe impairments:

> morbid obesity, diabetes mellitus, degenerative disc disease of the lumbar spine, depressive disorder moderate, Post-traumatic stress disorder (PTSD), and anxiety disorder.

(Tr. at 15.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 16.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform sedentary work, with additional limitations as follows:

> [Plaintiff] can lift no more than 10 pounds frequently and occasionally, can stand and walk for 2 hours in [an] 8 hour workday, and can sit for 6 hours out of an 8 hour workday. [Plaintiff] can push and pull as much as she can lift and carry. [She] can occasionally climb ramps and stairs. She can never climb

> ladders, ropes, or scaffolds. [Plaintiff] can occasionally stoop, kneel, crouch, and crawl. [She] is able to understand, recall and carry out simple routine tasks involving no more than simple, short instructions, and simple work-related decisions, with few workplace changes. [Plaintiff] can occasionally interact with and to supervisors and co-workers. She is unable to interact or respond appropriately to the public. [Plaintiff] is limited to simple work related decisions.

(Tr. at 18.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not perform any past relevant work. (Tr. at 25.) However, at step five, the ALJ determined that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 25-26.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 26.)

Plaintiff now raises three challenges to the ALJ's decision. First, she contends that, at step five, the ALJ failed to obtain a reasonable explanation for the apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). Second, Plaintiff argues that the RFC failed to properly account for her limitations in concentration, persistence, or pace as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Third, Plaintiff challenges the affirmative defense of *res judicata* asserted by Defendant in her Answer [Doc. #8]. Because the Court finds that Plaintiff's first contention requires remand, the Court need not address the remaining issues at this time.

A. DOT Conflict

Plaintiff first challenges the ALJ's reliance on the vocational expert's testimony at step five of the sequential analysis. In particular, Plaintiff contends that the Vocational Expert's testimony conflicted with the DOT, but that the ALJ failed to obtain a reasonable explanation

6

for the conflict. In Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Pearson, 810 F.3d at 209-10; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016).

In the instant case, Plaintiff contends that the vocational testimony on which the ALJ relied at step five of the sequential analysis conflicted with the DOT as to all of the identified jobs. Specifically, the ALJ identified three representative jobs available in the national economy that Plaintiff could perform: a Sorter (209.687-022), a Voucher Clerk (214.482-018), and a Call-Out Operator (237.367-014). Plaintiff first notes that the jobs of Medical-Voucher Clerk and Call-Out Operator both require a Reasoning Level of 3, defined as requiring the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." See DICOT 214.482-018, 1991 WL 671891; DICOT 237.367-014, 1991 WL 672186. Previous cases in this Circuit have found an apparent conflict between jobs requiring a Reasoning Level of 3 and a claimant's limitation to jobs involving only simple, routine, repetitive tasks. See, e.g., Mullis v. Colvin, No. 1:11CV22, 2014 WL 2257188 (M.D.N.C. May 29, 2014) (Osteen, C.J.) (finding an apparent conflict between an

7

RFC limitation to simple, routine, repetitive tasks at a low production pace and low stress environment and a VE's testimony that Plaintiff could perform a job to which the DOT assigned a Reasoning Level of 3); see also Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016) (holding that "there is an apparent conflict between an RFC that limits [the claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions," and "the VE's conclusory statement that a conflict did not exist was insufficient"). At no point did the ALJ ask the VE to explain the inconsistency between Plaintiff's RFC and the DOT Reasoning Level required to perform the jobs of Medical-Voucher Clerk and Call-Out Operator, nor did the ALJ ever receive a "reasonable explanation for [this] discrepancy." See Pearson, 810 F.3d at 209. In her Memorandum, the Commissioner does not provide any basis to dispute Plaintiff's contentions regarding the ALJ's failure to resolve the apparent conflict as to the Voucher Clerk and Call-Out Operator, and Defendant instead assumes for the sake of argument that those jobs should be eliminated. (Def.'s Br. [Doc. #20] at 5.)

Moreover, Plaintiff also notes that the job of Call-Out Operator requires significant interaction with people in the form of speaking and signaling. See DICOT 237.367-014, 1991 WL 672186. This requirement creates an apparent conflict with Plaintiff's ability to only occasionally interact with supervisors and co-workers and her complete inability to interact with or respond appropriately to the public. (Tr. at 18.) In fact, at the hearing, Plaintiff's attorney specifically asked the Vocational Expert about this position, and the Expert testified that a Call-Out Operator would be "compiling credit information, filing and getting that information together, putting the file together, doing some follow-up calls, check on

8

references, information that needs to be obtained," and later added that the follow-up would typically be with "[e]ither a creditor or a person applying for – for the credit." (Tr. at 91-92.) Plaintiff's counsel then asked the Vocation Expert how following up with a creditor or person applying for credit could *not* be considered public interaction. The expert then admitted that such activity would, in fact, involve public interaction, but that it would be no more than occasional and would be performed by telephone. (Tr. at 92.) It is not clear how this part of the Call-Out Operator job could be consistent with the RFC limiting Plaintiff to no interaction with the general public and an inability to respond appropriately to the public, and the ALJ failed to revisit or elicit an explanation for this additional conflict.

Again, Defendant does not directly refute the above conflicts. Instead, she contends that, "[e]ven assuming for the sake of argument that the jobs of voucher clerk and call-out operator should be eliminated, the sorter job remains." (Def.'s Br. [Doc. #20] at 5) Therefore, the Court accepts Plaintiff's contention that there are unexplained, unresolved conflicts as to the Voucher Clerk and Call-Out Operator positions, and the issue becomes whether the ALJ's failure to resolve those conflicts is harmless in light of the remaining Sorter position identified by the ALJ. However, as to the Sorter job, Plaintiff notes that the DOT classifies a Sorter as semi-skilled, while she was limited to unskilled positions.

In this regard, the vocational expert in this case correctly identified the job of Sorter, DICOT 209.687-022, 1991 WL 671812, as having a specific vocational preparation ("SVP") level of 3, indicating that the skills needed for the job take over one month, up to and including 3 months, to learn. See Social Security Ruling 00-4p, Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable

9

Occupational Information in Disability Decisions, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("SSR 00–4p") ("[U]nskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9."). Then, immediately after listing the SVP as 3, the Vocational Expert described the job as "unskilled as performed." (Tr. at 90.) However, the Vocational Expert did not offer any explanation for this substitution. Notably, the Vocational Expert was not testifying to Plaintiff's past work "as actually performed" by Plaintiff. Instead, she simply testified that the DOT position of Sorter was "unskilled as performed" without any further explanation as to whether all Sorter jobs are unskilled (directly contradicting the DOT), or whether some unidentified Sorter jobs in some unidentified circumstances were unskilled as performed by some unspecified subset of workers. Nowhere does the Vocational Expert provide further explanation or clarify whether the number of sorter jobs she identified represented the total number of sorter jobs available or some subset performed at the unskilled level. Thus, it appears that the expert simply disregarded the skill level set forth by the DOT and substituted her own in its place without explanation.

When later asked by the ALJ whether her testimony was consistent with the DOT – which it clearly was not for any of the three identified jobs – the Vocational Expert responded that it was, with the exception of Plaintiff's projected absenteeism and ability to stay on task. (Tr. at 93.) These two areas, she explained, were not addressed by the DOT, and as such, she based her answers "on a combination of [her] education, experience, [and] training, as well as compilation work and evaluating clients, job task analysis and placement[,] and listening to

testimony as to how work is performed." (Tr. at 93-94.) The expert provided no basis for her substantial deviation from the DOT itself.

In the ALJ's decision, the ALJ did note the conflict between the Vocational Expert's testimony and the DOT with respect to the designation for unskilled work for both the Sorter position and the Voucher Clerk position. Specifically, the ALJ stated that:

> Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. The vocational expert opined that although the above referenced jobs of sorter and voucher clerk have SVP of 3, they are unskilled based upon her experience analyzing these jobs.

(Tr. at 26.) However, contrary to the ALJ's statement, the Vocational Expert simply did not "opine[] that although the above referenced jobs of sorter and voucher clerk have SVP of 3, they are unskilled based upon her experience in analyzing jobs." Instead, as set out above, the Vocational Expert testified that there was no conflict between her testimony and the DOT, other than projected absenteeism and ability to stay on task not addressed in the DOT. The Vocational Expert did label the Sorter position as "unskilled as performed," but did not identify this as a conflict, or more importantly, provide any explanation. In Pearson, 810 F.3d at 209-10, the Fourth Circuit made clear that the ALJ must elicit an explanation for the conflict and must make two further findings: (1) that the explanation for the conflict was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Id.; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016) (noting that "an ALJ has not fully developed the record if the record contains an unresolved conflict between the expert's testimony and the DOT. . . . [B]ecause there was no explanation regarding the apparent conflict, there was no reasonable basis for relying on the expert's testimony, and,

thus, the testimony could not provide substantial evidence for a denial of benefits."); SSR 00-04p ("Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). Because the ALJ in the present case failed to elicit any explanation for the apparent conflicts in the expert's testimony, substantial evidence fails to support his determination at step five of the sequential analysis.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #19] should be DENIED, and Plaintiff's Motion for Summary Judgment [Doc. #15] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 26th day of February, 2018.

                                                /s/ Joi Elizabeth Peake
                                              United States Magistrate Judge